## David V. BELIEW *v.* STUTTGART RICE MILL

CA 98-525                                         987 S.W.2d 281

Court of Appeals of Arkansas
Division II
Opinion delivered December 23, 1998

*James G. Petty Jr.*, for appellant.

*Friday, Eldredge & Clark*, by: *James C. Baker* and *Betty J. Demory*, for appellee.

WENDELL L. GRIFFEN, Judge. David Beliew brings this appeal from the Arkansas Workers' Compensation Commission and challenges whether the Commission correctly (1) determined the proper compensation rate, (2) found that the Death and Permanent Total Disability Trust Fund's liability for payments did not begin until December 1997, and (3) found that additional payments made by Stuttgart Rice Mill, without modification of the award, are not gratuitous payments. We affirm the Commission on all points.

Beliew worked at Stuttgart Rice Mill on January 2, 1987, when he suffered a compensable injury arising out of and in the course of his employment. Because of that injury, he was temporarily totally disabled from January 3, 1987, through April 21, 1987. On January 19, 1988, he suffered a recurrence of his January 2, 1987 injury that caused him to again be temporarily totally disabled from January 19, 1988, through September 21, 1989. In his findings of fact, the Administrative Law Judge (whose opinion and findings of fact the Commission adopted) stated the healing period ended on September 26, 1989, with Beliew having sustained a permanent physical impairment of 25 percent of the body as a whole and that Beliew was permanently and totally disabled. The Death and Permanent Total Disability Trust Fund was ordered to begin paying benefits to the claimant on December 14, 1997, on the date when Stuttgart Rice Mill's payment of the proscribed $175 per week would reach the total cap of $75,000, notwithstanding the fact that Stuttgart Rice Mill had paid $189 rather than the ordered $175 per week because of an increase in the compensation rate after Beliew was injured.

Several months after the Administrative Law Judge first found the claimant to be permanently and totally disabled, Believ's attorney brought to the attention of the attorney for the employer's workers' compensation carrier a new issue under the holding of *Montgomery v. Delta Airlines*, 31 Ark. App. 203, 791 S.W.2d 716 (1990). Believ's attorney argued, and the employer's attorney apparently agreed, that the holding in *Montgomery* should apply to his case. In *Montgomery*, we held that a worker who was injured while one total disability rate was in effect and then returned to work and became permanently and totally disabled after a higher rate had gone into effect was entitled to the higher rate of compensation. Based on that decision, the employer's insurance carrier in the instant case began making weekly payments to the claimant in the amount of $189 rather than $175. Consequently, the employer reached its $75,000 ceiling in May 1997, rather than in December 1997. The Death and Permanent Total Disability Trust Fund refused to begin making payments until December 1997. Thus, Believ was without disability payments from May to December 1997.

Believ sought a hearing to protect the continuation of his weekly disability benefits. The parties stipulated the facts and the case was submitted to the Administrative Law Judge on briefs. Believ argued that *Montgomery* applied and that the carrier had been correctly making $189 weekly payments. Because the payments were correct, Believ maintained that the Trust Fund's obligation arose when the carrier reached its ceiling in May 1997. Alternatively, Believ argued that if the Trust Fund correctly refused to make payments until December 1997, then the extra fourteen dollars a week should be characterized as a gratuitous overpayment and not counted toward the $75,000 cap. Believ argued that because the carrier voluntarily changed the rate of payment without first obtaining a modification of the ALJ's order, it assumed the risk of contravening that order.

Based on the briefs, the Administrative Law Judge held that *res judicata* prevents the application of *Montgomery*, since "the compensation benefit rate is a matter that has been judicially determined by a competent authority." The Administrative Law Judge further opined that under *Hill v. CGR Medical Corp.*, 282 Ark. 35,

665 S.W.2d 274 (1984), the Trust Fund was permitted to with-hold payments until its obligation would have arisen had the carrier paid $175 per week. The Commission affirmed and adopted that decision on October 7, 1991.

█ On appellate review of workers' compensation cases we view the evidence and all reasonable inferences deducible there-from in the light most favorable to the findings of the Commission. *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). We should affirm the Commission's ruling if there is any substantial evidence to support the findings made. *Id.*

While the facts of *Hill* were different from the facts in this case, the reasoning underlying the holding of *Hill* is applicable. In *Hill*, a widow settled a third-party claim on terms that discharged the workers' compensation liability earlier than it would have been ordinarily fulfilled without the settlement. The court held that the Bank Fund "will become liable on the date the carrier's $50,000 limitation would have been discharged had there been no settlement." The basis of the holding was that the insurance carrier gave up its right to the subrogation funds (in a third-party suit against a tortfeasor who caused the injury) as a credit against future payments of compensation. While the facts are different in the case at bar there being no third-party suit or subrogation right, the reasoning regarding the position of the Trust Fund and the employer's insurance carrier is the same.

█ *Res judicata* applies where there has been a final adjudication on the merits of the issue by a court of competent jurisdiction on all matters litigated and those matters necessarily within the issue which might have been litigated. *Perry v. Leisure Lodge*, 19 Ark. App. 143, 718 S.W.2d 114 (1986).

█ In his first point on appeal, Beliew argues that *Mont-gomery* dictates that he should have been paid $189 instead of $175 and that because the Commission did not decide his compensation rate based on that holding, it is not *res judicata*. While the reasoning underlying *Montgomery* would likely be applicable to the case at bar, *Montgomery* was never raised, either to the Administrative Law Judge or the Commission. Beliew's argument is now barred

based on *res judicata*. The Commission made complete findings that should be given their full weight.

■ On his second point on appeal, Beliew argues that *Hill* does not apply and attempts to distinguish *Hill* from this case on the basis of intentional versus unintentional prepayment of benefits. Although Beliew is correct that there never was any waiver made or *quid pro quo* as there was in *Hill*, that fact is not determinative. Beliew requested an increase in the amount that was paid him weekly. The insurance carrier granted that request without having the original amount modified. Beliew attempts to place all of the burden of modification on the appellee, when, in fact, he could have sought a modification himself to support his position that the Trust Fund was obligated to begin payments in May 1997. Thus, appellant's second point on appeal is without merit.

■ Beliew's third point on appeal — whether the extra fourteen dollars per week paid by the carrier was gratuitous — is closely interwoven with his second point. Merely because the insurance carrier agreed to appellant's oral and written request that his weekly disability payments be increased fourteen dollars does not render the payments gratuitous. Beliew cites *Arkansas Vinegar Co. v. Ashby*, 294 Ark. 412, 743 S.W.2d 798 (1988), where we held that a carrier was not entitled to credit a lump-sum payment to a widow against the periodic payments due to remaining dependents. Beliew argues that the policy underlying *Arkansas Vinegar* should apply, saying that it is bad policy to let a party take credit for its willful deviation from an order. There was no issue of gratuitous payment in *Arkansas Vinegar*. Moreover, Beliew was benefitting by fourteen dollars per week due to the carrier's acquiescence to his demand for increased benefits.

As there was a substantial basis for the Workers' Compensation Commission's decision denying Beliew's claim we will not overturn it.

Affirmed.

PITTMAN and BIRD, JJ., agree.