

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-204

| | |
|---|---|
| SANDRA C. WILLIAMS | Opinion Delivered: SEPTEMBER 21, 2016 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G203173] |
| V. | |
| ARKANSAS DEPARTMENT OF COMMUNITY CORRECTION AND ARKANSAS INSURANCE DEPARTMENT, PUBLIC EMPLOYEE CLAIMS DIVISION | |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Sandra Williams appeals from a January 8, 2016 opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the Administrative Law Judge (ALJ) in favor of appellees the Arkansas Department of Community Correction and the Arkansas Insurance Department, Public Employee Claims Division. On appeal, appellant contends that the Commission's assignment of permanent partial-disability (PPD) benefits was not supported by substantial evidence. We disagree and affirm.

Appellant injured both arms and left knee on April 16, 2012, in a fall during her employment at the Arkansas Department of Community Correction. Appellees contested the claim. The ALJ found in a March 11, 2013 opinion that the injuries were compensable

and that appellant was entitled to temporary total-disability (TTD) benefits. Appellees did not appeal that decision.

After reaching maximum medical improvement, appellant sought PPD benefits arising out of her compensable injuries. Dr. J. Adam Smitherman, appellant's treating physician, assigned a forty-seven percent impairment rating to her right upper extremity and a five percent impairment rating to her left upper extremity. On the other hand, Dr. Bruce Randolph, who was retained by appellees to perform an independent medical examination on appellant, assigned only a four percent impairment rating to appellant's right wrist, a two percent impairment rating to appellant's right elbow, and a six percent impairment rating to her left wrist. A hearing was held before the ALJ on March 12, 2015, to determine the extent of appellant's permanent impairment.

At the hearing, appellant testified that Dr. Smitherman was her treating physician and that she had seen him several times. She saw Dr. Randolph on only one occasion after appellees had requested an independent medical evaluation. Appellant testified that both doctors conducted range-of-motion testing, which included testing where *she* moved her extremities (*active* range of motion) and testing where *the doctor* moved her extremities with her relaxed (*passive* range of motion).

The ALJ reviewed the medical records of each physician. The pertinent medical records reflect that Dr. Smitherman issued a written physician's statement opining that appellant had a forty-seven percent impairment rating to her upper extremity and a five percent impairment rating to her left wrist. Dr. Smitherman's statement additionally provided that the objective and measurable findings that formed the bases for the ratings

included "[l]oss of motion in Right Elbow, wrist & hand; Loss of motion Left elbow & wrist." Furthermore, Dr. Smitherman cited to Figures 32 and 35 and Tables 3 and 15 of the American Medical Association's Guides to the Evaluation of Permanent Impairment, Fourth Edition (AMA Guidelines), in support of his findings. Lastly, Dr. Smitherman checked the corresponding box on the report form indicating that he used passive range-of-motion criteria in assigning appellant's impairment.

Dr. Randolph examined appellant on February 10, 2015. In a very detailed report with charts and calculations, Dr. Randolph assigned a four percent upper-extremity impairment rating for appellant's right wrist, a two percent upper-extremity impairment rating for appellant's right elbow, and a six percent upper-extremity impairment rating for appellant's left wrist. Using the AMA Guidelines, Dr. Randolph calculated that these ratings translated to a seven percent whole-person impairment rating due to the loss of motion in appellant's right wrist, right elbow, and left wrist. He further explained that these ratings were based on passive range-of-motion criteria and were "given within reasonable medical certainty."

After the hearing, the ALJ filed its opinion on June 9, 2015, wherein it adopted the impairment ratings of Dr. Randolph and found that the appellant sustained a four percent upper-extremity impairment rating for appellant's right wrist, a two percent upper-extremity impairment rating for appellant's right elbow, and a six percent upper-extremity impairment rating for appellant's left wrist, and that appellant did not sustain her burden of proving additional impairment.

In resolving the conflicting medical opinions between Dr. Smitherman and Dr. Randolph concerning appellant's impairment rating, the ALJ specifically made the following findings:

> The Commission is authorized to accept or reject a medical opinion and is authorized to determine its medical soundness and probative value. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002); *Green Bay Packing v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 692 (1999). Based on my review of the evidence, I credit that both Smitherman and Randolph used only passive range-of-motion testing in assigning their ratings that they represented were based only on such testing.

> That said, in examining Dr. Smitherman's findings, there is no way to tell if the impairment ratings he assessed are valid ones based on his testing. When asked to cite the objective and measurable findings that he used, the doctor simply responded: "Loss of motion in Right Elbow, wrist, & head; Loss of motion Left elbow & wrist." These are not quantified in the evidence at bar. One cannot determine if the findings of his passive range-of-motion testing comport with Figures 32 and 35 and Tables 3 and 15—which Smitherman stated that he used—without resorting to speculation and conjecture. But speculation and conjecture cannot serve as a substitute for proof. *Dena Construction Co. v. Herndon*, 264 Ark. 791, 796, 575 S.W.2d 155 (1979). That said, I cannot, and do not, credit his findings regarding the degree of Claimant's alleged impairment.

> Dr. Randolph's findings, on the other hand, are extensively documented and comport with those portions of the AMA Guides he cited in support of the ratings he assigned under them. I thus credit his findings and find that the evidence preponderates that Claimant is entitled to impairment ratings of four percent (4%) to her right wrist, two percent (2%) to her right elbow, and six percent (6%) to her left wrist.

> However, as the parties have stipulated, Respondents have already accepted the above ratings. For that reason, Claimant has not proven by a preponderance of the evidence that she is entitled to additional permanent partial disability benefits.

Appellant appealed the ALJ's decision, and on January 8, 2016, the Commission, in a two-to-one majority opinion, affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's

findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

On appeal, appellant contends that the Commission erred in rejecting Dr. Smitherman's impairment ratings, that Dr. Smitherman's ratings were objectively based, and that the Commission's conclusion that she failed to meet her burden of proof is not supported by substantial evidence. We disagree.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force

and effect of a jury verdict. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock, supra.*

The Commission here was confronted with two opposing medical opinions—Dr. Smitherman's and Dr. Randolph's differing impairment ratings. It is within the Commission's province to reconcile conflicting evidence, including the medical evidence. *Id*; *Boykin v. Crockett Adjustment Ins.*, 2013 Ark. App. 157. The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *See Ark. Human Dev. Ctr. v. Courtney*, 99 Ark. App. 87, 257 S.W.3d 554 (2007). It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Id.* This is a classic "dueling-doctors" case in which this court is bound by the Commission's findings. Thus, we cannot say that there is not substantial evidence to support the Commission's decision.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Gary Davis*, for appellant.

*Charles H. McLemore Jr.*, for appellee.